UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRANDY LEE HEIM,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

DECISION & ORDER

18-CV-0714MWP

## PRELIMINARY STATEMENT

  Plaintiff Brandy Lee Heim ("Heim") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.
"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    Procedural History

On November 7, 2012, Heim filed her claim for SSI, alleging disability since September 1, 2009. (Tr. 41-46).[1] Her application was denied on November 6, 2013. (Tr. 47-61). On appeal, this Court entered a stipulation for remand agreed to by Heim and the Commissioner on November 4, 2015. (Tr. 386-87). On February 23, 2016, the Appeals Council entered a remand order instructing the ALJ to: (1) further consider the treating source opinion of Dr. Gordon Comstock ("Comstock"), MD, that Heim is disabled, pursuant to the relevant regulations; and (2) if warranted, obtain additional and updated evidence concerning Heim's impairments. (Tr. 398-99).

Heim's current appeal relates to the Commissioner's subsequent denial of her SSI application on remand on March 28, 2018. (Tr. 281-300).

## III.   ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Heim had not engaged in substantial gainful activity since November 7, 2012, the date she applied for SSI. (Tr. 283). At

---

[1] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

step two, the ALJ concluded that Heim had the severe impairments of "cervical disc syndrome, displacement of cervical intervertebral disc without myelopathy and degeneration of cervical intervertebral disc status post fusion surgery." (Tr. 284). The ALJ also concluded that Heim suffered from other impairments that were not severe. (Tr. 284-86). At step three, the ALJ determined that Heim did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 286).

The ALJ concluded that Heim retained the RFC to perform light work with certain limitations. (*Id.*). Specifically, Heim could: lift and carry twenty pounds occasionally and ten pounds constantly; sit for two hours continuously and six hours total during the workday; stand for thirty minutes continuously and three hours total during the workday; walk for thirty minutes continuously and one hour total during the workday; frequently reach with her right dominant arm and occasionally reach with her left arm; frequently handle, finger, feel, push and pull with her left arm; not perform overhead work; frequently stoop, kneel, crouch, and crawl; occasionally climb stairs, ramps, ladders, ropes, and scaffolds; frequently be exposed to moving mechanical parts; and frequently be exposed to extreme heat, cold, and vibration. (*Id.*).

At steps four and five, the ALJ found that Heim was unable to perform her past relevant work but that other jobs existed in the national economy that Heim could perform, including the positions of injection molder, small products assembler, and cashier II, all of which were unskilled, light-exertional jobs. (Tr. 290-91). Accordingly, the ALJ found that Heim was not disabled. (Tr. 292).

## IV. Heim's Contentions

Heim contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 14). Her sole contention is that the ALJ erroneously applied the treating physician rule when evaluating the opinions of Dr. Comstock – Heim's primary care physician. (Docket ## 10-1 at 22-28; 14 at 1-5).

## V. Analysis

Heim specifically points to several records completed by Comstock that she maintains are owed deference as treating source opinion evidence: first; a series of one-page documents Comstock completed for the Cattaraugus County Department of Social Services spanning from July 2013 to June 2017, in which Comstock sets forth his view that Heim either was unemployable or should remain off of work because of her cervical disc syndrome and neck pain (Tr. 1060-70); and second, Comstock's November 9, 2017 Physical Treating Medical Source Statement (Tr. 1055-59). I will turn first to Comstock's November 2017 medical source statement, as it is clear that this opinion qualifies as a "medical opinion" under the regulations, and, for the reasons stated below, that the ALJ failed to properly apply the treating physician rule to this opinion.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work

activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[2]. Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the

---

[2] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

7

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

>  (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
>  (2) the amount of medical evidence supporting the opinion,
>
>  (3) the consistency of the opinion with the record as a whole,
>
>  (4) whether the opinion is from a specialist, and
>
>  (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs'

decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). While an "ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source's opinion is a "procedural error," if a "searching review of the record" nonetheless assures the court that "the substance of the treating physician rule was not traversed, [the court] will affirm" the ALJ's decision. *See Estrella*, 925 F.3d at 96 (quotations omitted).

Comstock's November 2017 medical source statement represents his most detailed assessment of Heim's functional limitations based on their over four-year treating relationship. (Tr. 1055-59). In the opinion, Comstock indicated that he had been treating Heim since 2013, that Heim had cervical disc syndrome, that her prognosis was guarded, and that Heim's impairments could be expected to last at least twelve months. (Tr. 1055). Comstock reported that Heim's depression also affected her physical condition, that the pain associated with Heim's neck impairment would "constantly" interfere with her ability to maintain the attention and concentration needed to perform simple work tasks, and that Heim was incapable of performing even low-stress jobs. (Tr. 1056).

As far as physical limitations, Comstock opined that Heim could only walk two blocks without severe pain or needing to rest and could only sit or stand for thirty minutes at a time before needing to get up or sit down and walk around. (*Id.*). Heim could also sit and stand/walk for a total of about two hours in an eight-hour workday, would need the ability to walk around for ten minutes approximately every thirty minutes throughout a workday, and would need the ability to shift positions at will from sitting, standing, or walking. (Tr. 1057). Heim would also need to take unscheduled breaks for ten minutes every thirty minutes. (*Id.*).

9

Comstock also opined that Heim could rarely lift less than ten pounds and could never lift ten pounds or more, and that she had "significant limitations" in her ability to reach, handle, and finger. (Tr. 1057-58). Heim could also never look down or look up, could rarely turn her head right or left, but could occasionally hold her head in a static position. (Tr. 1058). Comstock indicated that Heim could never climb ladders, rarely stoop or bend, occasionally twist, and frequently crouch/squat and climb stairs. (*Id.*). Finally, Comstock indicated that Heim's impairments would produce good days and bad days and would likely cause her to be absent from work more than four days per month. (*Id.*).

The ALJ accorded this opinion "little weight," despite acknowledging Comstock as a "treating physician." (Tr. 289). In doing so, the ALJ noted that the opinion was "not supported by the evidence of record including [Comstock's] own treatment notes and other evidence"; the ALJ did not cite to any specific portion of Comstock's treatment notes or the record generally to support this assertion. (*Id.*). The ALJ also concluded that Heim's "admitted" ability to perform certain activities of daily living, such as "cook[ing], clean[ing], do[ing] laundry, shop[ping], and lift[ing] up to twenty pounds[,] carry[ing] [two] grocery bags at a time[,] [and] lifting a case of water[,]" "contradict[ed] [Comstock's] findings that [Heim] c[ould] rarely lift ten pounds." (*Id.*). "More importantly," in the ALJ's view, were Comstock's "repeatedly normal or near normal physical examinations of [Heim]." (Tr. 289-90). The ALJ finally noted that Comstock's medical source statement "was set forth after [Heim] visited [Comstock] in November 2017 requesting a statement of disability." (Tr. 290 (citing Tr. 1028)).

Heim specifically contends that the ALJ failed to consider the "duration or nature of the treating relationship" between Comstock and Heim, relied on mischaracterizations of the record in concluding that Comstock's physical examinations of Heim were "repeatedly normal or

10

near normal," and provided "conclusory" reasons to discount Comstock's opinion by "not cit[ing] any records to support his conclusions." (Docket # 10-1 at 25-28). Upon review of the ALJ's decision and the record, I agree that the ALJ misapplied the treating physician rule in evaluating Comstock's November 2017 opinion for several reasons and that a "searching review" of the record does not otherwise permit this Court to conclude that the ALJ applied the substance of the treating physician rule in evaluating that opinion. *See Estrella*, 925 F.3d at 96.

While the ALJ referenced various treatment notes from Comstock's four-year treating relationship with Heim in the RFC portion of his decision, and the ALJ noted that Comstock was Heim's "family medicine physician, not a provider with greater expertise in the area of concern" (Tr. 287-89), the ALJ gave no additional consideration to the fact that Comstock was unquestionably the treating source with the longest and most frequent contact with Heim when discussing Comstock's medical source statement. While Comstock's lengthy treating relationship with Heim alone is not dispositive on the issue of how much weight to assign his opinion, the ALJ was obligated to "explicitly consider" this factor. *See*, *e.g.*, *Ferraro v. Saul*, __ F. App'x __, 2020 WL 1189399, *2 (2d Cir. 2020) (summary order) (rejecting the argument that the ALJ explicitly considered the frequency, length, nature, and extent of treatment between treating doctors and claimant by "acknowledg[ing] that [treating doctors] had ongoing treating relationships with [claimant] beginning in 2014"; "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment'[;] [t]his is particularly true where, as here, the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans").

11

More significantly, the ALJ seemingly overlooked evidence from Comstock's treatment notes and other providers in the record that supported certain aspects of Comstock's medical source statement. *See*, *e.g.*, *Smith v. Colvin*, 17 F. Supp. 3d 260, 269 (W.D.N.Y. 2014) ("[h]owever, the court's review of the record reveals substantial evidence from plaintiff's treating sources which the ALJ either overlooked or ignored, and which should have triggered compliance with the requirement to consider the factors set forth at 20 C.F.R. § 416.927(c) in deciding how much weight should be attributed to this evidence"). For example, as mentioned above, Comstock opined that Heim could never look down or look up, could rarely turn her head right or left, and could only occasionally hold her head in a static position. (Tr. 1058). Even a cursory review of Comstock's treatment notes over the years supports this opinion, as those notes reveal that Heim consistently demonstrated very limited range of motion and pain in her neck. (*See*, *e.g.*, Tr. 222 (April 11, 2013 treatment note noting very limited range of motion in Heim's neck); Tr. 260 (July 11, 2013 treatment note noting pain and limitation on rotation in Heim's neck); Tr. 263 (August 3, 2013 treatment note noting very limited range of motion in Heim's neck); Tr. 266 (September 9, 2013 treatment note noting very limited range of motion and pain in Heim's neck); Tr. 584 (February 26, 2016 treatment note noting very limited range of motion in Heim's neck); Tr. 989 (January 30, 2017 treatment note noting limited range of motion in all directions in Heim's neck); Tr. 1042 (March 31, 2017 treatment note noting very limited range of motion in Heim's neck); Tr. 1030 (November 9, 2017 treatment note noting very limited range of motion in Heim's neck)). None of this evidence – which is flatly at odds with the ALJ's conclusory statement that Comstock's own treatment notes do not support his medical source statement and that Comstock "noted repeatedly normal or near normal physical examinations of [Heim]" (Tr. 289-90) – was discussed by the ALJ. Moreover, the ALJ did not

even provide specific citations to the records he believed supported these generalized conclusions.

A review of the ALJ's RFC analysis suggests that he relied primarily on Comstock's physical examination findings that Heim had good strength and sensation in her upper extremities – many of which were from the same examinations in which Comstock also found limited neck movement and pain noted above. (*See* Tr. 287-88). However, the ALJ failed to adequately explain how evidence related to Heim's upper extremities diminished the abnormal physical examination findings related to Heim's neck impairment, which supported Comstock's opinion and which clearly were favorable to Heim's disability application. *See Mecklenburg v. Astrue*, 2009 WL 4042939, *4 (W.D.N.Y. 2009) ("[a]n ALJ need not mention every piece of evidence in the record, but at the same time he cannot pick and choose only parts of a medical opinion favoring his conclusion of nondisability and he cannot ignore an entire line of evidence that is contrary to his findings") (alterations, citations, and quotations omitted).

The ALJ's failure to address Heim's abnormal neck examination findings is particularly problematic because the ALJ failed to include any specific limitations in the RFC related to Heim's neck impairment, despite finding at step two of the sequential analysis that Heim had the severe impairments of cervical disc syndrome, displacement of cervical intervertebral disc without myelopathy, and degeneration of cervical intervertebral status post fusion surgery. (Tr. 284, 286). In other words, despite multiple severe impairments relating to Heim's cervical spine, the ALJ apparently overlooked evidence from Heim's treating source demonstrating that Heim in fact had abnormal physical examinations and restrictions related to her neck, and his RFC did not accommodate any associated limitations.

In addition, and further contrary to the ALJ's conclusory reasoning, other evidence in the record supported Comstock's opinion related to Heim's neck impairment. For instance, MRI results of Heim's cervical spine revealed abnormal findings at the C4-C5, C5-C6, and C6-C7 levels. (*See*, *e.g.*, Tr. 246 (June 6, 2013 MRI demonstrating "straightening of the normal cervical lordosis[;] [t]here is intervertebral disc space narrowing with associated signal changes of the intervertebral discs and bony spurring of the vertebral bodies most prominent at C4-C5 and C5-C6[;] . . . [t]here appears to be mild indention of the ventral cord at C4-C5[;] . . . [a]t C6-C7 there is a right lateral posterior disc osteophyte complex extending to the right neural foramen causing neural foraminal stenosis"); Tr. 644-65 (April 22, 2014 MRI demonstrating "mild broad-based posterior disc herniations at C4-C5, C5-C6 and C6-C7[;] [t]he most prominent is at C4-C5 where there is the most effacement of the CSF ventral to the spinal cord"); Tr. 582 (February 8, 2016 MRI demonstrating "a left paracentral disc herniation which appear[ed] larger than seen on the prior study . . . [and] mild deformity of the left ventral border of the spinal cord")). Heim also had cervical epidural injections with no relief of her symptoms (*see*, *e.g.*, Tr. 658, 682) and ultimately underwent an anterior cervical discectomy and decompression of her spinal cord and neural elements and fusion at the C4-C5 level on December 8, 2014 (*see* Tr. 748-49).

Moreover, the consultative examination performed by Dr. Nikita Dave ("Dave"), MD, on January 20, 2017, corroborated Heim's neck pain and supported Comstock's associated functional limitations. (Tr. 887-98). In relevant part, Heim reported to Dave that she had long-standing neck pain, which became aggravated with repetitive use and range of motion of the right upper extremity "and otherwise spontaneous[ly]." (Tr. 887). On physical examination, Heim demonstrated limited range of motion in her cervical spine. (Tr. 889). Accordingly,

14

Dave's medical source opinion included "[m]oderate limitations for repetitive bending/twisting through the cervical spine, lifting, carrying, pushing and pulling of heavy objects, and prolonged sitting, standing, or walking upright without head and neck rest or support or rest intervals." (Tr. 890). The ALJ accorded this opinion "significant weight," but failed without explanation to incorporate into the RFC the specific neck-related limitations opined by Dave. (Tr. 286, 289).

Furthermore, Heim's admitted ability to do certain activities of daily living does not necessarily support the ALJ's decision to accord less than controlling weight to Comstock's opinion in this case. Indeed, while Heim testified at the administrative hearing and reported to Dave that she could perform activities such as shopping, cooking, and doing laundry, the ALJ failed to mention Heim's reported difficulties while doing these activities. (*See*, *e.g.*, Tr. 327 (Heim noting that it is hard for her to fold laundry); Tr. 331 (Heim noting that it is hard for her lift a case of water); Tr. 332 (Heim noting that she can only carry "a couple [grocery bags] at a time, but being a single mother, [she is] forced to do a lot that causes [her] pain or is very strenuous on [her]")). The ALJ thus failed to provide a complete assessment of Heim's ability to perform these activities. Moreover, the activities mentioned by the ALJ hardly address the fundamental question of whether Heim's severe cervical neck impairments would limit her ability to do any work-related activities on a full-time basis. *See*, *e.g.*, *Harris v. Colvin*, 149 F. Supp. 3d 435, 445-46 (W.D.N.Y. 2016) ("[c]ourts in this Circuit repeatedly have recognized that a claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job[;] . . . [d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations") (alterations and quotations omitted).

For all these reasons, I find that the ALJ failed to properly apply the treating physician rule and failed to provide good reasons for discounting Comstock's November 2017 medical source statement, and thus that the ALJ's RFC determination is not supported by substantial evidence.[3]

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and Heim's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 27, 2020

---

[3] This finding is based on my view that the ALJ erroneously weighed Comstock's November 2017 medical source statement. I recognize that Heim also contends that the ALJ erred in evaluating certain documents Comstock completed for the Cattaraugus County Department of Social Services. (Tr. 1060-70). I need not reach the issue of whether the ALJ appropriately applied the treating physician rule to these statements because I find that the ALJ's error in evaluating Comstock's November 2017 opinion is a sufficient basis, standing alone, to warrant remand. On remand, I urge the ALJ to again reconsider the entirety of Comstock's treating relationship with Heim – particularly with regard to Heim's severe neck impairment – and to reevaluate all Comstock's opinions, including the statements provided to the Cattaraugus County Department of Social Services. The ALJ should also reweigh the opinions provided by other providers in the record upon reconsidering the evidence he overlooked relating to Heim's neck impairment.